# Creel *v.* Creel *et al.*

### *Removal of Estate From Probate to Chancery Court.*

(Decided June 9, 1910.   Rehearing denied June 30, 1910.
52 South. 902.)

1. *Executors and Administrators; Descent of Real Property.*— Lands of a decedent descends to the heirs and not the personal representative, and every step taken by the personal representative in regard to the land is an interference with the rights of the heir.

2. *Same.*—All the powers conferred and the duties enjoined by the statute upon the personal representative as to the lands of the decedent are in the interest of the creditors of the estate, and antagonistic to the rights of the heir.

3. *Same; Power to Sell Land.*—The personal representative has no duty or power to sell the lands belonging to the estate except for some purpose of administration or unless it becomes necessary to sell for distribution among the heirs, and can do so then only in the manner prescribed by the statute.

4. *Same; Sale of Lands; Bill to Enjoin; Demurrer.*—Where an administrator has no power or duty to do what the bill alleges he agreed to do or what the bill seeks to have a court of equity compel him to do; and, even if he had, there was no consideration asserted for his relieving complainant from the payment of the balance confessed by the bill to be owing on the land, and where complainant did not offer to pay any balance found due, a demurrer should have been sustained to the bill since the lands of the heirs could not be subjected to compensate for the errors or wrongs of either the complainant or the administrator.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by John T. Creel and others and George W. Creel as administrator to enjoin an administrator's sale of land and to remove the estate from the probate to the chancery court. From a decree overruling demurrer to the bill the respondents appeal. Reversed and rendered.

STERLING A. WOOD, for appellant. The bill has no equity because there was a failure to offer to do equity. —*Southern Ry. Co. v. Hood,* 126 Ala. 318; *1st Nat. Bank v. Thompson,* 116 Ala. 166; 6 A. & E. Enc. of Law, 707; 1 Story Eq. 64e; 1 Spelling on Injunc. sec. 102. On the subject of non-compliance with the bids counsel cites section 2612, Code 1896; *Culli v. House,* 133 Ala. 304. The bill does not show that the jurisdiction of the probate court had not attached for final settlement.— *Baker v. Mitchell,* 109 Ala. 490. The bill fails to show that complainant had any interest in the estate.—*Baker v. Mitchell, supra; Ligon v. Ligon,* 105 Ala. 464; *Bromberg v. Bates,* 98 Ala. 621; *Greenhood v. Greenhood,* 143 Ala. 442.

[Creel v. Creel, et al.]

ALLEN & BELL, for appellee. Sale number one was unquestionably void.—*Swink v. Snodgrass,* 17 Ala. 653; *Lay v. Lawson,* 23 Ala. 390; *Reynolds v. Kirtland,* 44 Ala. 312; *Warring v. Lewis,* 53 Ala. 615. Sale number two was by agreement after discovery that sale one was void and complainant bid more than the value of the land and no offer to refund the money was ever made. Under the facts appellee was not required to do more equity than he had already done, and sale number three was properly made and should have been reported and confirmed.—*Cruikshanks v. Luttrell,* 67 Ala. 318; *Matthews v. Dowling,* 54 Ala. 202; *Pickens v. Yarbrough,* 30 Ala. 408; *Bell v. Craig,* 52 Ala. 215; *Woodstock v. Fulenwider,* 87 Ala. 584; *Smith v. Lusk,* 119 Ala. 394; *Hobbs v. N. C. & St. L.,* 122 Ala. 602 and authorities there cited. The complainant had a right to removal into a court of equity under the peculiar facts in this case.— *Graham v. Abercrombie,* 8 Ala. 559; *Smith v. Hall,* 20 Ala. 777; *Simmons v. Knight,* 35 Ala. 106; *Bank v. Spears,* 125 Ala. 234; *Patton v. Monroe,* 139 Ala. 482. The statute of frauds was not involved.—*Shakespere v. Alba,* 76 Ala. 351; *Martin v. Blanchett,* 77 Ala. 288; *Oden v. Dupre,* 99 Ala. 36.

MAYFIELD, J.—The bill is filed to enjoin an administrator's sale of land, and to remove the settlement of the estate from the probate to the chancery court. The bill alleges a contract between complainant and the administrator, made out of court, whereby the former purchased the land in question, and payment by complainant of the purchase price; that on discovering that the administrator had no authority to sell, except as authorized by the statute and a court of competen jurisdiction, it was agreed between complainant and the administrator that the latter should have the land sold by

proper proceedings in the probate court, and that complainant should become the bidder for said property, at such sale, at such price "as the same could be bought for at the said sale"; and that the administrator then agreed that the property was not worth $1,000, and that it would not bring that sum at the sale; and that the administrator then advised complainant not to pay any more of the purchase price until after the sale, that the property might bring $1,000, and that he did not desire to make complainant pay more than the property brought at the sale. The land was accordingly sold by the court, and complainant purchased at the sale, for the price of $1,000, which was reported to the court; but it was further reported that complainant had failed to comply with his bid, and had not paid all of the purchase price. And the purchaser being in open court, and assenting to such report, and assenting to a resale of the property by the court, the said sale was set aside and a resale ordered; and on the second sale the complainant become the purchaser, at the price of $700, which amount complainant declined to pay, on the ground that he had originally agreed to purchase the property from the administrator at private sale at $1,000, and had paid $700 of the purchase price, and that the administrator had this money and should accept it as the purchase price at the last sale. The auctioneer refused to accept this statement as payment, or to accept complainant as the purchaser on these conditions, and then and there offered the land for sale again; and at this sale a third party, one Wood, became the purchaser and was reported to the court as such purchaser; and the auctioneer refused to report the complainant as the purchaser for $700, because he would not pay that amount in cash. The probate court re-

fused to confirm this sale to Wood, and ordered a re-
sale of the property.

Complainant further alleges that said probate court
was proceeding to order another sale, and would not
accept complainant's bid, and his original payment of
$700 to the administrator as the purchase price; that
the administrator had agreed to accept this as pay-
ment, and had agreed that this was all the land was
worth, and that he would have his attorney to make
complainant a deed as cheaply as possible.

Land descends to the heirs and not to the personal
representative. Every step the administrator takes, in
regard to the land, is an interference with the rights
of the heirs. All the powers conferred or duties im-
posed by the statutes, as to the land, are in the in-
terest of the creditors of the estate, and are antagonis-
tic to the rights of the heirs.—3 Mayfield's Dig. p. 681.
The administrator, therefore, has no duty, right, or
power to sell the lands of the estate, except for the
purpose, and in the manner prescribed by the statute.
Unless needed for some purpose of administration, such
as paying debts of the estate, the personalty being in-
sufficient for that purpose, or unless it becomes neces-
sary to sell for distribution among the heirs, the admin-
istrator never has any right, power, or duty, as to the
land. It belongs to the heirs or devisees. In no event
can the administrator, without the aid of a court of com-
petent jurisdiction, sell or even contract to sell the
lands of the estate.

It may be that the complainant twice agreed to pay
$300 too much for the land—that is, more than it was
worth—but as to this we do not decide. If such was
the case, he has no one to blame but himself. He neith-
er shows nor attempts to show why he should be re-
lieved from paying the three hundred dollars, as condi-

tion to having the land conveyed to him, except that the administrator probably agreed or promised to relieve him.   The bill then prays to enjoin this last ordered sale, and to compel the administrator to make complainant a deed to the land, and that the settlement of the estate be removed from the probate court to the chancery court.   The administrator demurred to the bill on a number of grounds.   The chancellor overruled the demurrer, and from that decree this appeal is prosecuted.

· The bill is palpably defective for the reason pointed out in the demurrer.   It sets up an original contract made with the administrator, without the aid of a court for the purchase of lands of the estate of the intestate. Such contract was of course void, and could not be enforced against either party.   In fact, the bill alleges that complainant discovered this before he had paid all of the purchase price, and that he and the administrator agreed that, in order to correct this error, they would have the land sold in the probate court as authorized by law; that it was so sold; that complainant bid it off at the same price, and deliberately declined to comply with his bid, because he and the administrator concluded the price was too much, and that it ought to be sold again at a less price; that the administrator procured or consented for it to be resold in order that he might purchase it at low price, that it was so resold, and that he did again bid it off, at a less price, and that he again declined to pay his bid—this time on the ground that he had paid the administrator that amount on his original void contract of purchase.   And complainant now asks a court of chancery to aid him, and compel the administrator to deprive the heirs or creditors of the estate of the intestate of $300.

[Creel v. Creel, et al.]

The bill affirmatively shows that complainant has never complied and has never offered to comply, with the terms of a single one of his numerous contracts or bids as to this land; that he deliberately and willfully refused to perform any one of his contracts. The only excuse he assigns for all his wrongs is that he twice promised to pay too much for the land, and that the administrator admitted this and promised to help him out of his mistake, by continuing to have the land resold until he could bid it off at a low price. The bill thus shows a premeditated scheme on the part of complainant and the administrator to release the former from his confessed liability of $300 to the estate, and permit him to obtain the lands of the heirs of the estate of the intestate at a price $300 less than that at which he had twice agreed to purchase. This, in law though not in fact, would be palpable fraud on the heirs of the estate or on its creditors, one or both. The administrator, of course, had no duty, right, or power to do what the bill alleges he agreed to do, nor what this bill seeks to have a court of chancery to compel him to do. The administrator had no right to make any such promise as to the lands of the estate; and, even if he had such right, there was shown no consideration whatever for his relieving complainant from the payment of the $300 which the bill confesses he owes for the land. Moreover, the bill seeks to have the land conveyed to complainant, yet it does not offer to pay the $300, if found to be due. In short, it seeks to have the court convey to complainant the land in question without his paying one cent into court in consideration therefor, the only excuse assigned for the failure being that he had paid the administrator a part of the purchase price, such part as the land was worth, and that the administrator had spent this money.

As before stated, the administrator had not right or duty to make such contract, or to so act, and the lands of the heirs cannot be subjected to compensate for the errors or wrongs of either the complainant or the administrator. The complainant shows no right or color of right, on his part, to have the administration removed from the probate into the chancery court.

It follows that the decree of the chancellor overruling the demurrer to the bill is error, for which it must be reversed; and a decree will be here rendered sustaining the demurrer to the bill.

Reversed and rendered.

SIMPSON, McCLELLAN, and EVANS, JJ., concur.